UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEX HOLMES, JOSH NAVARRO, NICO TRAMONTANA, BITCOIN VENTURES 2020, LLC, YASAR CORPORATION and ONEPURPOSE LTD., | **DECLARATION IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT** |
| Plaintiffs. | **BY LARS ELLER** |
| -against- | Pursuant to 28 U.S.C. §1746 |
| CHET MINING CO, LLC, CHET MINING CO CANADA LTD., and CHET STOJANOVICH, | Civ. Action No.: Civ. Action No.: 1:20-cv-04448-LJL |
| Defendants. | |

I, **LARS ELLER**, declare under penalty of perjury that the following is true and accurate:

1. I am the sole owner and member of plaintiff BITCOIN VENTURES 2020, LLC ("BV2020") in this action. I respectfully submit this declaration in support of my motion for a default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure and Local Rule 55.2. This declaration is based on my personal knowledge.

2. BV2020 seeks a default judgment against the defendants, jointly and severally, for the total sum certain of $120,750.00, itemized below. This sum certain represents purchase monies that I paid the defendants for goods which the defendants failed to deliver. This is detailed in the Complaint and further discussed below.

3. BV2020's claims arise out of transactions that I personally entered into with the defendants (described below). I have assigned my claims from these transactions to my company (BV2020), which is why BV2020 is captioned here as the plaintiff.

4. In June 2019, defendant Chet Stojanovich, who held himself out as the owner and sole officer of Chet Mining Co., LLC and Chet Mining Co. Canada Ltd., offered to sell me one

1

hundred (100) L3+/++ and twenty-five (25) S9 cryptocurrency mining devices and one (1) year of hosting services for those devices. The defendants offered a purchase price of $120,750.00.

5. On June 5, 2019, Stojanovich transmitted to me an invoice on CMC's letterhead, memorializing this offer at the $120,750.00 price. A true and accurate copy of that invoice is annexed hereto as **Exhibit A**.

6. I accepted that offer, and paid the purchase price of $120,750.00 to Chet Mining Co., LLC, by wire transfer on June 6, 2019. A true and accurate copy of the wire transfer record (with account numbers redacted) is annexed hereto as **Exhibit B**.

7. The equipment I ordered was supposed to be delivered to and hosted at a cryptocurrency mining facility in Canada purportedly owned or controlled by the defendant Chet Mining Co. Canada, Ltd. "Hosting" a person's mining machine means to connect it to a power source at a well-powered facility and run the machine so that it can operate, verify cryptocurrency transactions, and earn money for its owner.

8. As I allege in the Complaint (and which the defendants have not denied), the defendants did not deliver any of the equipment that I ordered, for which I paid the $120,750.00, and the defendants have refused my demands that they return my money. (ECF Doc. #1, ¶¶81-82.)

9. Initially, the defendants deceived me into believing that they had delivered my machines to their facility and were hosting them. They did this by paying returns to me, from time to time, in the form of Bitcoin. In the period from the period of time between May 27, 2019 and April 3, 2020, I received a total of 2.4120262 Bitcoin from the defendants. Chet Stojanovich characterized these Bitcoin payments to me as returns from my machines. Over time I became suspicious because these payments became irregular and erratic, and Stojanovich began evading

my attempts to reach him (eventually ceasing contact altogether). I have since heard from other sources that defendant Stojanovich would sometimes generate pretextual "returns" for purchasers by buying "NiceHash" shares (according to my co-plaintiff Alex Holmes, Chet Stojanovich admitted to him that he did this). NiceHash is an online platform in which you can purchase a financial interest in the returns of someone else's mining machine, instead of owning and hosting a physical machine yourself. I believe this is what happened with me. The defendants never provided me with serial numbers or any other proof that my machines existed and, as noted, eventually ceased contact with me altogether.

10. As noted, between May 27, 2019 and April 3, 2020 the defendants transmitted a total of 2.4120262 Bitcoin to me in deceptive "returns." Bitcoin fluctuates in value, but the value by the day is tracked and published by numerous resources (similar to historic stock values), such as Yahoo Finance.[1] According to the daily closing averages reported there in the "Historical Prices" tool, the average daily closing value per Bitcoin in U.S. Dollars between May 27, 2019 and April 3, 2020 was $8,923.75. Using that average as a basis, the value of deceptive "returns" that the defendants transmitted to me during that period was approximately $21,524.32 ($8,923.75 x 2.4120262 = $21,524.32).

11. My attorney discusses in his affirmation whether or not this amount should be deducted from my damages, and I will defer to his statements in that regard. But for the reasons set forth by him in his supplemental affirmation, I respectfully submit that it should not.

12. As noted, I have assigned my claims for damages against the defendants to my company, plaintiff BV2020.

---

[1] https://finance.yahoo.com/quote/BTC-USD/history?period1=1558483200&period2=1584576000&interval=1d&filter=history&frequency=1d

3

WHEREFORE, for the reasons set forth above and in the accompanying Affirmation of my attorney, I respectfully request a default judgment against the defendants in favor of plaintiff BITCOIN VENTURES 2020, LLC, jointly and severally, in the sum of $120,750.00.

Executed on August  19 , 2020            _____
                                                    Lars Eller

## ASSIGNMENT OF CLAIMS AGREEMENT

WHEREAS, Lars Eller (the "Assignor"), in or around June, 2019, agreed and/or was induced to enter into a certain business arrangement with Chet Mining Co, LLC ("Chet Mining") wherein Assignor, pursuant to certain representations made by Chet Stojanovich ("Stojanovich"), Chet Mining's manager and sole member, electronically transferred one hundred twenty thousand seven hundred fifty United States dollars ($120,750.00) (hereinafter, the "Damages") to Chet Mining, said sum set forth on that certain invoice referencing "Lars#3"; and,

WHEREAS, Assignor did not receive the products or services for which he paid; and,

WHEREAS, Assignor possesses claims, and the right to bring such claims, against one, some, or all of Chet Mining, Stojanovich, and/or Chet Mining Co Canada, Ltd. (collectively, the "Chet Mining Defendants") arising from his payment of the Damages and any other amounts paid to, or lost as a result of the actions and/or omissions of, the Chet Mining Defendants (the "Claims"); and,

WHEREAS, Assignor, upon the terms and subject to the conditions set forth in this Agreement, desires to sell, transfer, assign, grant, and convey to Bitcoin Ventures 2020, LLC, a Virginia limited liability company (the "Assignee"), the Transferred Rights (as defined hereinafter), and Assignee desires to purchase, acquire, and receive the Transferred Rights.

NOW THEREFORE, Assignee and Assignor (each a "Party" and collectively, the "Parties") agree as follows:

1. Assignor, for good and valuable consideration, does hereby assign, sell, convey, grant, and transfer unto Assignee all of Assignor's rights, title, and interest in, to, and under, (a) the Claims, (b) any and all right to receive principal, interest, fees, damages of any nature (including, without limitation, compensatory, consequential, exemplary, special, and/or statutory damages), penalties, attorney's fees awards, and other amounts in respect of and/or arising out of the Claims (in each case whether accruing prior to, on, or after the date of this Agreement), (c) any actions, claims, rights, lawsuits, and/or causes of action against one, some, or all of the Chet Mining Defendants, including, without limitation, any such actions, claims, rights, lawsuits, and/or causes of action arising out of or in connection with (i) Assignor's communications with one, some, or all of the Chet Mining Defendants and/or (ii) Assignor's payment of the Damages; and, (d) all proceeds of any kind of the foregoing, including, without limitation, all judgments, collection proceeds, cash, securities, Bitcoins, or other property distributed or payable in connection therewith or on account thereof, all of the foregoing being collectively referred to herein as the "Transferred Rights." This assignment shall be deemed an absolute and unconditional assignment of the Transferred Rights for the purpose of collection and satisfaction and shall not be deemed to create a security interest.

2. Assignor agrees to provide all reasonable assistance that Assignee requires in connection with Assignee pursuing actions, claims, rights, lawsuits, and/or causes of action against one, some, or all of the Chet Mining Defendants and collection of any proceeds therefrom.

3.  Assignor agrees to execute and deliver (or cause to be executed and delivered) all such instruments and documents, and to take all such action as Assignee may reasonably request, in order to effectuate the intent and purpose of, and to carry out the terms of, this Agreement and to cause Assignee to become the legal and beneficial owner and holder of the Transferred Rights.

4.  If any provision of this Agreement or any other agreement or document delivered in connection with this Agreement, if any, is partially or completely invalid or unenforceable in any jurisdiction, then that provision shall be ineffective in that jurisdiction to the extent of its invalidity or unenforceability, but the invalidity or unenforceability of that provision shall not affect the validity or enforceability of any other provision of this Agreement, all of which shall be construed and enforced as if that invalid or unenforceable provision were omitted, nor shall the invalidity or unenforceability of that provision in one jurisdiction affect its validity or enforceability in any other jurisdiction.

5.  The Parties do not intend to benefit any third party by entering into this Agreement, and nothing contained in this Agreement confers any right or benefit upon any person or entity who or which is not a signatory of this Agreement.

6.  The Agreement shall be construed, governed, and enforced in accordance with the laws of the Commonwealth of Virginia, excluding that body of laws pertaining to conflicts of laws.

_[signature]_
Lars Eller (Assignor)

_[signature]_
Bitcoin Ventures 2020, LLC (Assignee)
By: Lars Eller
Its: Manager

2