# E. STEWART JONES HACKER MURPHY LLP

## ATTORNEYS & COUNSELORS AT LAW

**Please send all mail to:**
**TROY OFFICE**

28 SECOND STREET
TROY, NY 12180
PHONE: (518) 274-5820

200 HARBORSIDE DRIVE, SUITE 300
SCHENECTADY, NY 12305
PHONE: (518) 783-3843

511 BROADWAY
SARATOGA SPRINGS, NY 12866
PHONE: (518) 584-8886

1659 CENTRAL AVENUE, SUITE 103
ALBANY, NY 12205
PHONE: (518) 486-8800

FAX: (518) 274-5875

www.joneshacker.com

February 15, 2022

**VIA FEDERAL EXPRESS & E-MAIL TO:**
admin@phoenixdatas.com
Chet Stojanovich
50 West Street, Apt. 29A
New York, New York 10007

Chet Stojanovich
105 Duane Street, Apt. 20F
New York, New York 10007

RE:   Alex Holmes, et al. v. Chet Stojanovich, et al.  Case No.: 7:20cv04448 and
        Andrew Schwartzberg v. Chet Stojanovich, et al.  Case No.: 1:20cv01880

Dear Chet:

Please be advised that the Court ordered in-person deposition will be held on Friday, March 4, 2022 at 11:30am.  The deposition will take place at Diamond Court Reporting located at 7 Time Square, Manhattan, New York.

Enclosed please find a copy of the Contempt Hearing Transcript.

Very truly yours,

E. STEWART JONES HACKER MURPHY LLP

*/s/ John F. Harwick*
John F. Harwick, Esq.
jharwick@joneshacker.com
Direct Dial: (518) 213-0113

JFH:dmd
Enclosure

cc:     Clients

M2EMHOLC                                                    1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   ALEX HOLMES, *et al.*,

4                  Plaintiffs,

5            v.                          20 CV 4448 (LJL)

6   CHET MINING CO CANADA LTD., *et*
    *al.*,
7
                 Defendants.            Conference
8                                       (via Telephone)
    ------------------------------x
9                                       New York, N.Y.
                                        February 14, 2022
10                                      11:05 a.m.

11  Before:

12                    HON. LEWIS J. LIMAN,

13                                      District Judge

14                        APPEARANCES

15  E. STEWART JONES HACKER MURPHY LLP
         Attorneys for Plaintiffs
16  BY:  JOHN F. HARWICK

17  CHET STOJANOVICH, Defendant *Pro Se*

18

19

20

21

22

23

24

25

1           (Case called)

2           THE COURT:  We are here today on the application by

3    the plaintiffs for an order of finding Mr. Stojanovich in

4    contempt.  I have in front of me the plaintiffs' motion for

5    contempt, which comes with a memorandum of law and an affidavit

6    of Mr. Harwick.  I have Mr. Harwick on the phone.  I also have

7    Mr. Stojanovich on the phone.

8           Before we go further, I want to make sure that neither

9    party objects to me proceeding today telephonically.

10   Mr. Harwick.

11          MR. HARWICK:  No objection, your Honor.

12          THE COURT:  Mr. Stojanovich.

13          MR. STOJANOVICH:  No objection.  Is my counselor on

14   the phone as well?

15          THE COURT:  Mr. Stojanovich, we don't have counsel on

16   the phone for you.

17          MR. STOJANOVICH:  That's a problem.  I have to figure

18   out where he is.

19          THE COURT:  We will adjourn until 11:15.

20          Mr. Stojanovich, you have some time to get a lawyer on

21   the phone.  Otherwise, the hearing was noticed, and I intend to

22   go forward with it.

23          I would ask the parties and the court reporter to

24   please try to stay on the phone line.  I am going to put my

25   phone line on hold.  I will join you again at 11:15.

1            MR. HARWICK:  Your Honor I would just like to know who

2    Mr. Stojanovich's purported attorney is.  I have been trying to

3    see if there is going to be representation.  I know he has

4    counsel in California, but they have declined representing him

5    in this proceeding.  If I could ask the Court to obtain

6    information about who Mr. Stojanovich's counsel purportedly is,

7    I would appreciate that.

8            THE COURT:  Who is that, Mr. Stojanovich?

9            MR. STOJANOVICH:  I'm reaching out to Mark Riera.  I

10   don't know if he has somebody in his stead to do this.  I'm

11   kind of confused.  I thought he was going to be on the phone.

12           MR. HARWICK:  Your Honor, if I may interject, Mark

13   Riera is an attorney out in California that I have been

14   corresponding with about some behind-the-scenes negotiations.

15   I asked him if he was going to be appearing on

16   Mr. Stojanovich's behalf at today's hearing and he said

17   absolutely not.  He is not admitted in New York State to

18   practice law, and he is not admitted in the Southern District

19   of New York federal court.  So he advised me last week

20   specifically that he would not be appearing at today's

21   conference, at today's hearing.

22           THE COURT:  I am still going to adjourn until 11:15.

23   I'll be back on with you.

24           MR. STOJANOVICH:  I appreciate it, your Honor.  I'm

25   sorry for this delay.  I really apologize for this.

 1          (Recess)

 2          THE COURT:  Do I have Mr. Harwick on the phone?

 3          MR. HARWICK:  Yes, your Honor.

 4          THE COURT:  Do I have Mr. Stojanovich on the phone?

 5          MR. STOJANOVICH:  Yes, your Honor.

 6          THE COURT:  Is there counsel for Mr. Stojanovich?

 7          MR. STOJANOVICH:  I am still trying to find out who is

 8  supposed to be here right now.  I apologize for this.  I don't

 9  know why there isn't somebody present.

10          THE COURT:  We are going to proceed.  The hearing has

11  been noticed for today and no counsel previously has noticed an

12  appearance on behalf of Mr. Stojanovich.

13          Mr. Harwick, let me hear from you first with respect

14  to your application, and then I will hear from Mr. Stojanovich.

15          MR. HARWICK:  Thank you, your Honor.

16          May it please the Court, John F. Harwick on behalf of

17  the plaintiffs judgment creditors and movants:  Alex Holmes;

18  Josh Navarro; Nico Tramontana; Bitcoin Ventures 2020, LLC;

19  Yasar Corporation; and OnePurpose LTD.  My clients are judgment

20  creditors as against Chet Stojanovich and his various

21  companies.

22          THE COURT:  Let me interrupt you for a second,

23  Mr. Harwick.  Anybody who is not speaking should put their

24  phone on mute.  That means the only person whose phone should

25  not be on mute are myself and Mr. Harwick.

1          Please proceed, Mr. Harwick.

2          MR. HARWICK:   Thank you, your Honor.

3          I don't know if you need me to rehash any of that from

4   before, but the essentially I'm representing all the plaintiffs

5   in this case who are judgment creditors and the movants herein

6   as against Mr. Stojanovich and his related companies with

7   regard to what we think is a fraudulent scheme that deprived my

8   clients collectively of over a million dollars.

9          In Bitcoin we successfully obtained default judgments

10  against Mr. Stojanovich and then proceeded with collection

11  activities under the Federal Rules of Civil Procedure and the

12  New York State Article 52 of the CPLR, made applicable by the

13  federal rules, including issuing and serving an Article 52

14  subpoena for Mr. Stojanovich's deposition testimony and for him

15  to produce various documents and records.

16          As I set forth in my moving papers, which I am not

17  going to rehash her in the record because they are already part

18  of the record, Mr. Stojanovich was extremely evasive and

19  nonresponsive in many of his answers when by finally pinned him

20  down for a deposition after what I'll describe as herculean

21  efforts to get him to appear and to be present at an Article 52

22  deposition.

23          Critically, he failed to produce essentially any of

24  the documents that we subpoenaed with regard to his finances,

25  with regard to his business transactions, with regard to his

M2EMHOLC

1    dealings.

2          I can represent to the Court that it has come to our

3    attention, since the filing of this motion, since the

4    deposition, that there are financial accounts and institutions

5    out there that Mr. Stojanovich is utilizing that he did not

6    disclose, that he did not reveal at his deposition, that he did

7    not produce documents and paperwork for, one of which is

8    located at Morgan Stanley.  We were able to locate an account

9    for him at Morgan Stanley and another shell business that he is

10   using called Phoenix Investments or something to do with

11   Phoenix.

12         I also note for the record that we complied with all

13   procedural aspects of making this motion for contempt,

14   including properly serving Mr. Stojanovich personally with the

15   application, and, obviously, he was put on notice of this

16   application, because he's on the call today, and we also served

17   him with a copy of local rule 83.6, as required by the local

18   rules, which sets forth the procedure for contempt.

19         So we are asking the Court to issue an order holding

20   Mr. Stojanovich in contempt of Court, reimbursing us for

21   reasonable attorneys' fees, ordering him to appear, I would say

22   at this point in time, in person at a deposition.  We have had

23   some technical difficulties, feigned or real, in the past,

24   trying to conduct this deposition by and zoom.  I would request

25   that he be ordered to appear in person for a further Article 52

1    deposition and provide a written sworn to response with regard

2    to each category of the documents that we subpoena as shown by

3    Exhibit A to our Article 52 subpoena.

4            I am reserving my right to issue additional subpoenas

5    because we have, as I have indicated, discovered different

6    shell entities that we believe Mr. Stojanovich is currently

7    using to defraud additional investors and to hide assets.

8            So that's our application.

9            I will note for the record that I have spoken with an

10   attorney by the name of Mark Riera, who represents Chet on some

11   underlying negotiations that we were having.  I did ask

12   Mr. Riera if he was going to appear or secure representation

13   for Mr. Stojanovich at today's contempt hearing.  After I did

14   send him the notice of the hearing and advised him to -- I also

15   sent him the contempt motion as well, that is, Mr. Riera, and

16   advised him of today's hearing.  I sent him a copy of today's

17   hearing order.  And he unequivocally said he is not admitted to

18   practice law in the State of New York, not admitted in the

19   Southern District of New York, and would not be appearing here

20   today.

21           This is the first step to get Mr. Stojanovich to

22   comply with our outstanding discovery.  If he fails to comply,

23   I am going to ask the Court to hold Mr. Stojanovich in criminal

24   contempt and to further ask that the Court issue an arrest

25   warrant directed towards the United States Marshal to find and

1    arrest Mr. Stojanovich if he continues to fail to comply with

2    our efforts to discover his assets and allow for the collection

3    of these substantial judgments.

4              Finally, I will note for the record that

5    Mr. Stojanovich lives in Manhattan, in an apartment that we

6    believe rents for approximately $6,000 per month.  His Morgan

7    Stanley account shows substantial brokerage activity, as does

8    his Coinbase account, which shows millions of dollars being

9    transacted over the last several years in cryptocurrency.

10             One of the main things we are seeking to discover here

11   is his hard drives and the keys to his cryptocurrency assets in

12   his cryptocurrency accounts.  That was also part of my

13   subpoenas and my supplemental subpoenas.

14             In sum, we are asking the Court to issue an order

15   finding Mr. Stojanovich in contempt by fully complying with all

16   outstanding discovery, including but not limited to, providing

17   us with access to his cryptocurrency accounts and assets.

18   Falling short of his full compliance, we are going to ask that

19   he be placed under arrest by the United States Marshal until he

20   does comply.

21             THE COURT:  Let me ask you a few follow-up questions.

22             First of all, in terms of the order that you contend

23   Mr. Stojanovich has failed to comply with, I gather, it is, in

24   part, the failure to appear on September 2, 2021, which was

25   required by the subpoenas that you served on him, including the

1   May 18, 2021 subpoena, is that correct?

2            MR. HARWICK:  Yes.

3            THE COURT:  Then, in addition to the failure to

4   appear, are you also seeking a contempt order with respect to

5   the failure to produce the documents demanded by the subpoenas?

6            MR. HARWICK:  Yes, your Honor.

7            THE COURT:  Could you identify for me some of the

8   specific requests that you contend that Mr. Stojanovich has

9   failed to comply with and your evidence that supports that

10  failure to comply.  You're welcome to go through every single

11  one of them.  You're also welcome to just highlight the ones

12  for me that you think are most important.

13           MR. HARWICK:  Essentially, we subpoenaed

14  Mr. Stojanovich and his company, attached as schedule A, which

15  has a laundry list of documents that we typically see in

16  collection cases.  He essentially failed to comply with almost

17  everything on that list.

18           THE COURT:  I have Exhibit A to Exhibit 62-4 in front

19  of me.

20           Mr. Harwick, I have in front of me Exhibit A to your

21  January 29, 2021 subpoena, which also appears at the docket at

22  62-4.  Is that what I should be looking at, Exhibit C?

23           MR. HARWICK:  That's what you should be looking at,

24  your Honor.  I also made some follow-up demands and requests

25  later on at depositions when he did appear, specifically

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    seeking hard drives and data.

2         I am not sure how much the Court is aware of

3    cryptocurrency, but essentially cryptocurrency is electronic

4    currency that can be kept on various hard drives and on

5    electronic devices instead of at financial institutions.  We

6    had requested that he produce hard drives.  We requested that

7    he produce his telephone.  We requested that he produce his

8    log-in information to his Apple iCloud account, which he

9    testified would have documentation about his crypto assets.

10        But essentially, your Honor, Mr. Stojanovich failed to

11   produce in any meaningful manner any of the documentation that

12   we subpoenaed, which you are correct, is attached to our

13   subpoena as Exhibit A.

14        THE COURT:  Am I correct in thinking that that begins

15   at item 52 with all cryptocurrency records and statements and

16   end at item 61, with any other information documents or

17   electronic data showing ownership or control of any

18   cryptocurrency?

19        MR. HARWICK:  Yes, your Honor.  That, amongst the

20   other more traditional documentation with regard to his

21   traditional assets, he has failed to produce.

22        THE COURT:  Do you want to make a proffer to me or

23   point me to the evidence -- perhaps it's from the deposition --

24   that shows that he has some of the information that you are

25   seeking in the subpoena and that he failed to produce.

1             MR. HARWICK:  I can go through that.  Let me just pull

2    up that deposition transcript.  There were several.  But I'll

3    make a representation to the Court that he did testify at his

4    deposition that he had -- for example, one stark example is the

5    log-on information for his iCloud account.  We went through

6    that at length.  He promised to get it to me, but he never did.

7    That's one I mean.

8             There is a page in the transcript, but he claimed to

9    have a hard drive or some type of document down in his car, and

10   we invited him to go get it in his car, and he refused to go

11   get it.

12            We do believe he has this information.  Like I said, I

13   can also file a supplemental document that sets forth exactly

14   what he testified to --

15            THE COURT:  I have your Exhibit J, which is his

16   testimony, and I have read it.  I am satisfied that you can

17   make the finding that he testified that there is information

18   that was called for by the subpoena but that has not been

19   produced, but I'll be asking you for the records to just point

20   out some of that.

21            MR. HARWICK:  I apologize I didn't go through the

22   deposition with a fine-tooth comb before this hearing.  I can

23   submit a supplemental --

24            THE COURT:  I don't want you to do that.  I want to

25   resolve this today.

1              I'm looking at page 45 of the deposition.  You asked

2      the question:  Do you own any cryptocurrency?  And there is an

3      answer:  I have some miscellaneous wallets with like a little

4      bit of crypto I found recently, but I liquidated most of it.

5              Is that part of what you are referring to?

6              MR. HARWICK:  Yes, it is.  The reality of this case,

7      Judge, is that we know he stole over a million dollars from my

8      clients.

9              THE COURT:  Mr. Harwick, do you have the deposition in

10     front of you?

11             MR. HARWICK:  I'm pulling it up now.

12             THE COURT:  Why don't you spend a minute and be

13     prepared to go through with me what your highlights are.  I've

14     got --

15             MR. HARWICK:  Let me just put you on mute so I'm not

16     giving you any feedback while I pull up this deposition.

17             MR. STOJANOVICH:  Your Honor, should I stay quiet

18     until you ask me to speak?

19             THE COURT:  Mr. Stojanovich, I'll give you an

20     opportunity after he is done.

21             MR. STOJANOVICH:  OK.  Thank you very much, your

22     Honor.

23             THE COURT:  Mr. Harwick, are you prepared?

24             MR. HARWICK:  Yes.  I'm just pulling up the deposition

25     on my computer here.  I'm sorry, Judge.  What page were you on?

1        THE COURT:  You just tell me what pages you want me to

2   focus on.  You know your deposition.

3        MR. HARWICK:  Your Honor, I'm referring to page 45-46

4   of the deposition transcript where I'm asking him about his

5   various accounts at these brokerage houses, one of which is

6   called Gemini, another of which is called Coinbase.  We are

7   trying to locate his crypto assets.  He acknowledges he has

8   some crypto, liquidated the crypto within the last few months.

9   He references that at page 45 of the deposition.

10        Again, it is also not only related to crypto, but

11   related to his traditional assets.  We know he has got to have

12   a bank account somewhere to pay his bills.  We know he has to

13   have a bank account to pay his rent.

14        At page 77 to 83, there is a discussion about external

15   hard drive, which it's my understanding that crypto can

16   actually be stored on an external hard drive and then accessed

17   if you have the correct key.  So we asked him about that from

18   page 77 to 83 of the transcript.

19        We asked him about the account statements for bank

20   accounts in which he accepted payments from the plaintiffs or

21   deposited money from the plaintiffs at page 67 and 68.

22        Also, he acknowledged the existence of financial

23   accounts at Charles Schwab and TD Ameritrade at page 107, 108

24   of the deposition.  Again, all this documentation was not

25   produced.  When pressed about it he said -- he continually said

1    he would have to check or he'd have to go check this.  He

2    didn't know which credit cards were still active.  That's at

3    page 31-32 of the transcript.

4          His father passed away and left a testamentary trust.

5    Again, he wasn't producing any information about that.  That's

6    at page 25 of the transcript.

7          The discussion on the crypto essentially runs from

8    page 45 to page 51 of the transcript.

9          THE COURT:  Last question I've got for you.  As part

10   of your relief I jotted down that you are seeking written

11   responses by Mr. Stojanovich to your subpoenas.  Did I jot that

12   down correctly?

13         MR. HARWICK:  Yeah.  For each category of documents

14   what I think we need to do is he needs -- I need to depose him

15   again, and he needs to answer these questions truthfully and

16   fully.  Before that, I need him to produce the documentation

17   that is called for by the subpoena.

18         THE COURT:  I understand that.

19         Mr. Harwick, you anticipated my question, which was

20   going to be why you would need written responses to the

21   requests in the subpoena, as opposed to just asking him orally

22   about them and getting the documents in advance.

23         Let me hear from Mr. Stojanovich.

24         Mr. Stojanovich, can you explain to me why you didn't

25   appear at the deposition and what your excuse is for failing to

M2EMHOLC

1    produce the documents.  You can tell me anything else you want

2    me to know.

3              MR. STOJANOVICH:  Yeah.

4              For starters, we were working towards a mutual

5    settlement at that time.  So I thought it was mutually agreed

6    that I wouldn't have to go on September because we were talking

7    behind and, as of very recently, we signed a settlement

8    agreement that was proposed forward.

9              I have no issue producing any documents that I have.

10   There are a few areas that you guys covered.  During the

11   deposition they asked me if I had any crypto holdings.  When I

12   said I had very small, probably some very small holdings here

13   and there, it's not like in a traditional way and it's not --

14   it was the backup hard drive for my documents, not for my

15   crypto holdings.  That backup drive I was talking about I

16   couldn't find, and it was for my bank records that I had

17   before, but those accounts had already been closed that he was

18   asking about.

19             One of the difficult things about getting bank

20   accounts that have already closed, the records for it, banks,

21   they usually don't keep them for very long.  So I put in a

22   request for them, but during COVID it was very difficult

23   because there was no in-branch ability to go see a banker,

24   which with Charles Schwab and TD those accounts have been

25   closed, and there wasn't really somebody that could in to

1    produce those documents.

2          I am not trying to withhold these document or hide

3    anything whatsoever.  I went ahead and tried to produce as much

4    as I could on that list.  Some of the stuff just didn't apply

5    where I just didn't have one thing or another ever, so it

6    didn't apply at all.

7          I have no problem producing anything that he requests,

8    but, in large part, I thought today we were going to be

9    removing the motion because of the settlement agreement that we

10   had.  That's predominantly why we didn't do a follow-up on

11   this.  And this motion for a contempt was filed just before the

12   settlement agreement was reached.  That's why this stuff wasn't

13   produced because, frankly, I didn't think that it was needed,

14   needed to be produced.

15         That is predominantly the first reason why the stuff

16   wasn't turned over, and I'm more than happy to turn over

17   anything that the requested, of course.  I'm an open book in

18   that regard.

19         It's going to take me time to compile everything.

20   Some of the stuff doesn't apply and some of the stuff does.  It

21   came down to basically working together on this to go ahead and

22   find an amicable solution.  What I'm trying to do right now is

23   figure out exactly what the path is forward for everybody to

24   obviously part ways amicably and the settlement to be sorted

25   out.

1       I do understand that there was also a serving -- he

2   brought up the apartment.  I don't live there anymore, so I

3   didn't get the serving.  All I got was -- I got a notification

4   that the court date was here.  It was a one-pager.  It was

5   dropped at my old building.

6       I was trying to figure out what the best way forward

7   was with the settlement agreement.  When it came to my

8   apartment, I basically moved out of my apartment almost --

9   quite a while ago, and I'm in between places right now, so I

10  didn't get the full deposition documents.

11      I have had some issues in that regard with getting

12  mail and stuff like that, so I don't know how it was sent over.

13  But the building will sometimes just grab that stuff.

14  Sometimes they notify me.  Sometimes they don't.  But when I

15  was notified of this date, I got a one-pager from the Court

16  saying that I had to show up, and I feel clearly willfully

17  unprepared for this because I'm also not confident about the

18  decorum of such a hearing or what I'm supposed to do.

19      I also would -- my counselor got me in touch with

20  another lawyer for this specific issue, but I didn't think that

21  we were going to even move forward with this because of the

22  settlement agreement.

23      I kind of don't know where to begin on that stuff, but

24  I didn't get the full documents to be prepared for today, and I

25  know that that's my responsibility to sort out.  But, at the

 1   same time, I wish I had a better beat on all of the stuff right

 2   now because I don't have the deposition documentation or the

 3   ability to go trace back over, which counsel is.

 4          While I know this is important for them to have, and

 5   if they are going to continue moving forward with the -- with

 6   this motion, then I am going to make sure that I go ahead and

 7   provide whatever documentation that they need.  Obviously,

 8   whatever is being settled prior to this is going to have be

 9   sorted out as well.

10          I'm trying to do everything in good faith right now.

11          Is there anything else that I need to cover, your

12   Honor?

13          THE COURT:  I do have a couple of questions for you,

14   Mr. Stojanovich.

15          First, is your e-mail Chet@Chetmining --

16          MR. STOJANOVICH:  I don't have that anymore.

17          THE COURT:  Sir, you knew your deposition was

18   continued until September 2, 2021, didn't you?

19          MR. STOJANOVICH:  We spoke about it, but we were

20   moving forward on the precept that we were going to sign a

21   settlement agreement and that the deposition wouldn't need to

22   be continued.

23          THE COURT:  Did anybody from the plaintiffs actually

24   tell you that you didn't need to appear on September 2, 2021?

25          MR. STOJANOVICH:  This is what I discussed with John

1   in detail.  It was what my counselor was doing over at JMJB.

2   That's how we were proceeding forward.

3              THE COURT:  No.  I don't know if you answered my

4   question.

5              Did anybody who represented the plaintiff actually

6   say, prior to September 2, 2021, that you did not need to

7   appear on September 2, 2021?

8              MR. STOJANOVICH:  I do believe John had said that I

9   don't need to appear if we were doing a settlement.

10             THE COURT:  When do you say he said that?

11             MR. STOJANOVICH:  This was, I think, a week before,

12   two weeks, in August, we had spoken on the phone.

13             THE COURT:  Here is what I am going to do,

14   Mr. Harwick.  I am going to hold in abeyance the motion for

15   contempt, but I am going to order Mr. Stojanovich to appear in

16   person for a deposition.  I am going to give him a date

17   certain, which you will give me in a moment.  I am going to

18   provide a date certain by which he has to produce all of the

19   documents.  And then I am going to schedule a hearing for a

20   point after that with respect to your motion for contempt at

21   which I will hear the evidence with respect to him being

22   relieved from the September 2 deposition, as well as your

23   application with respect to contempt on the failure to produce

24   documents.  I want to do all of that quite quickly.

25             Mr. Harwick, why don't you tell me when you want to do

1    the deposition in person.

2         MR. HARWICK:  Yes, your Honor.  Let me check my

3    calendar.

4         I just would like to add, for the record, that I did

5    not relieve Mr. Stojanovich from appearing at the September

6    deposition, verbally or in writing.  If I had done it, I would

7    have done it in writing, not verbally, and I didn't do it

8    verbally or in writing.

9         THE COURT:  That's what I will need the hearing on.

10   Somebody is right and somebody is wrong.  If they are wrong,

11   and there is willfulness in terms of what they have said, civil

12   contempt may be the least of the issues.

13        What date?

14        MR. HARWICK:  Let me see, your Honor.  I would like to

15   do this on -- Friday, March 4 would work for me.

16        THE COURT:  What time and where?

17        MR. HARWICK:  I would have to secure a location in New

18   York City.  I believe Mr. Stojanovich lives in Manhattan.

19   Maybe Diamond Court Reporting or a place to be announced.  I

20   don't know if the Court has any facilities to conduct

21   depositions.

22        But typically when I have done them in the city, I

23   have used Diamond Court Reporting.  They have facilities in

24   midtown Manhattan.  I would have to confirm with them that

25   those facilities are open.  I believe they are.  I haven't been

1    down since before COVID.  But I would need to come down on the

2    train, so to commence probably at noon and go until we complete

3    the deposition.

4              I also wanted to note for the record that at page 118

5    of the deposition transcript, attached to the motion papers as

6    Exhibit J, we did demand the production of a number of other

7    things which I consider to be part of the subpoena.

8              I would propose March 4, 2022 commencing at -- I could

9    get down there by 11:30 and just continuing.  I would just want

10   to confirm the location with Diamond Court Reporting.  I know

11   they have more than one office, but I would want to pick an

12   office that's located somewhere in Manhattan, if

13   Mr. Stojanovich still lives in Manhattan.

14             I'd also ask that we be provided with his current

15   address so we can complete mailings and service upon him at his

16   current address if in fact he has moved.

17             Also, I would like to get an updated e-mail.  The ones

18   that I've been sending to the Chet Mining e-mail have not been

19   getting returned.  But Mr. Stojanovich did e-mail me today,

20   your Honor, for the record, from an e-mail that has the

21   following address:  admin@phoenixdatas.com.

22             I would just ask that he confirm that that's his

23   correct e-mail and give us his correct residential address, for

24   the record, as well as his phone number.

25             THE COURT:  Let me turn to that in a moment.

1          Mr. Stojanovich, is there any reason why I shouldn't

2    order you to appear on March 4, 2022 at 11:30 a.m. at a Diamond

3    Court Reporting office for your deposition to continue until

4    concluded?

5          MR. STOJANOVICH:  For the face-to-face deposition, is

6    it possible that we -- if I could speak to my counselor about

7    how that should be done.  I am right now between places, as I

8    said.  I am outside of the city.

9          THE COURT:  No.  You are going to give me -- either

10   March 4 there is a good reason --

11         MR. STOJANOVICH:  March 4 is fine, is what I'm saying.

12   Is it possible that I can have a counselor there is what I'm

13   asking?

14         THE COURT:  If you have a counselor who represents you

15   and who appears in this case and files an appearance in this

16   case, then you can have a lawyer present.  I'm not going to

17   stand in your way.

18         I am going to order you to appear on March 4, 2022 at

19   11:30 a.m. at a Diamond Court Reporting office in New York City

20   to be designated by the plaintiffs.

21         I'm also going to order you by March 1 to produce all

22   of the documents that have been requested in the subpoenas,

23   dated January 29, 2021; March 29, 2021; and May 18, 2021 as

24   further supplemented by the requests made in your deposition of

25   June 23, 2021, which was adjourned to September 2, 2021.

1          I am going to hold in abeyance the motion for a

2    contempt order, and in a moment I am going to get a date from

3    my courtroom deputy for that.

4          Mr. Stojanovich, were you trying to say something?

5          MR. STOJANOVICH:  No.  There was a beeping sound while

6    you were speaking.

7          THE COURT:  Do you understand what I've said, that you

8    need to appear on March 4, 2022 at a Diamond Court Reporting

9    office?

10         MR. STOJANOVICH:  Yes, I do, your Honor.

11         THE COURT:  I'm also going to direct you to update the

12    clerk of the court of the Southern District of New York with a

13    current mailing address for you.

14         MR. STOJANOVICH:  Absolutely.

15         THE COURT:  Can you give us right now, on the record,

16    your mailing address and your current e-mail.

17         MR. STOJANOVICH:  My current e-mail is the one that he

18    listed before, the admin@phoenixdatas.com.

19         THE COURT:  Please state it again so the court

20    reporter can get it down.

21         MR. STOJANOVICH:  The admin@phoenixdatas.com.

22         THE COURT:  Please spell it.

23         MR. STOJANOVICH:  A-d-m-i-n-a-t-p-h-o-e-n-i-x-d-a-t-a-

24    s.com.

25         THE COURT:  What is your mailing address?

1          MR. STOJANOVICH:  My mailing address -- this is

2  probably the best one I can give -- is -- sorry.  I've been

3  switching between places.  I have to look it up real quick.

4  I'm sorry.  It's a new address.  They can also use a lawyer's

5  address as well over at JMJB in California.  I just don't have

6  a very permanent address right now.

7          THE COURT:  Mr. Stojanovich.

8          MR. STOJANOVICH:  50 West Street, New York, New York,

9  10006.

10          MR. HARWICK:  Is there an apartment number?

11          MR. STOJANOVICH:  29A is my former apartment number.

12  That's the most recent -- that's the most active address I can

13  use right now.  I had to vacate my previous place.

14          THE COURT:  Mr. Harwick, does that do it for you?

15          MR. HARWICK:  Your Honor, we have tried service at

16  that and those documents come back unclaimed.  That is his

17  former address before he moved to Duane Street.

18          Are you representing to the Court, Mr. Stojanovich,

19  that you are no longer residing at the Duane Street address

20  where we served you with the various subpoenas?

21          MR. STOJANOVICH:  No, I'm not.

22          THE COURT:  Mr. Stojanovich, let me further advise you

23  of a couple of things.

24          First of all, in order to receive copies of court

25  filings, you need to do one of two things.  You need to make

M2EMHOLC

1    sure the Clerk of Court has a current address for you where

2    items can be sent, or if you wish to receive service by e-mail,

3    you can get in touch with the Clerk of Court.  There is a form,

4    and you can give them your e-mail address.  I would encourage

5    you to go to the Court's website and to do one of those two.

6            In the absence of you providing either a current

7    mailing address or filling out the form for e-mail service, we

8    will assume that you have got a notice.  You understand?

9            MR. STOJANOVICH:  Yes.  What I'll do is, I'll fill out

10   that form on the Court's website so we can send things

11   electronically.

12           THE COURT:  The second thing that I am going to advise

13   you of, Mr. Stojanovich, is that there is a legal clinic in the

14   Southern District of New York.  It's called the NYLAG legal

15   clinic.  It does provide advice to people who are *pro se* and

16   who generally cannot afford counsel.  I don't know whether you

17   qualify for getting advice from them, but they are a resource

18   that is available.  Their information is also available on the

19   Court's website, and you might consult with them.

20           MR. STOJANOVICH:  I thank you for that, your Honor.

21   That will be helpful.

22           THE COURT:  One last thing before we schedule the

23   adjourned date for the contempt hearing.

24           Mr. Harwick, I am going to order you to order a copy

25   of this transcript and to provide a copy of that transcript to

1    Mr. Stojanovich so that he is aware, again, of my orders and

2    the reasons for them.

3            Before we get to a date for the adjourned hearing, is

4    there anything further from you, Mr. Harwick?

5            MR. HARWICK:  No, your Honor.  Thank you.

6            THE COURT:  Anything further from you,

7    Mr. Stojanovich?

8            MR. STOJANOVICH:  No, your Honor.  Thank you very

9    much.

10           THE COURT:  Matt, date in late March for the adjourned

11   hearing for contempt proceeding.

12           THE DEPUTY CLERK:  We can do March 25 at 4:30 p.m.

13           THE COURT:  March 25 at 4:30 p.m.  That will be remote

14   unless I receive a request two days before, so by 5 p.m. on

15   March 23, for the proceeding to take place in the courtroom.

16   Otherwise, I will assume that it is proceeding remotely.  If

17   either side wants it to be in person, just send me that letter

18   and he will do it in person.

19           Thank you to the court reporter.  Everybody, stay safe

20   and stay healthy.

21           Mr. Stojanovich, again, March 4, 2022 at 11:30 a.m.

22           Mr. Harwick, why don't you file on the docket a letter

23   by Wednesday of this week with the precise location where the

24   deposition is going to take place.  Any problems with that?

25           MR. HARWICK:  Yes.  No problem with that.

M2EMHOLC                                                                          27

1          THE COURT:  Good luck, everybody.  Stay safe and stay

2  healthy.  Thank you.

3          (Adjourned)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT COURT

---

ALEX HOLMES, et al.,

                               Plaintiffs,

             *-against-*

CHET MINING CO., LLC, et al.

                              Defendants.

**AFFIDAVIT OF SERVICE**
Case No.:  7:20-cv-0448-UA

---

STATE OF NEW YORK     )
                          )ss:
COUNTY OF SCHENECTADY   )

Deanna M. Dudley, being duly sworn, deposes and says that she is over the age of 18 years and is not a party to this action; on the 15th day of February 2022, she served the within **2-15-2022 LETTER TO CHET STOJANOVICH REGARDING DATE, TIME AND LOCATION OF COURT ORDERED DEPOSITION ENCLOSING A COPY OF THE CONTEMPT HEARING TRANSCRIPT** upon the following:

TO:    Chet Stojanovich                   Chet Stojanovich
        50 West Street, Apt. 29A         105 Duane Street, Apt. 20F
        New York, New York 10007       New York, New York 10007
        admin@phoenixdatas.com         *Federal Express Tracking No.: 776049580820*
        *Federal Express Tracking No.:776049564282*

by depositing a true and correct copy of the same via e-mail and via Federal Express-Overnight Mail (Signature Required) directed to said individual and/or attorney(s), respectively, at said address(es), mentioned above, that being the address(es) within the state designated for that purpose upon the last papers served in this action or the place where the above then resided or kept offices, according to the best information which can be conveniently obtained.

                                                Deanna M. Dudley

Sworn to before me this
15th day of February 2022.

Notary Public - State of New York
**STEPHANIE HARRIS**
*Notary Public, State of New York*
*Qualified in Schenectady County*
*No.: 01LO6083461*
*Commission Expires on 11/12/23*

**Deanna Dudley**

| | |
|---|---|
| **From:** | Deanna Dudley |
| **Sent:** | Tuesday, February 15, 2022 1:43 PM |
| **To:** | admin@phoenixdatas.com |
| **Cc:** | John Harwick; Alex Holmes; Nico Tramontana; Lars Eller; brad@beyondenterprizes.com; Josh Navarro; Andrew Schwartzberg; Amir Fardghassemi |
| **Subject:** | Holmes, et al. v. Chet Stojanovich, et al. |
| **Attachments:** | 2022_02_15_13_40_58.pdf |

On behalf of John Harwick, please find the attached correspondence advising you of the Court ordered deposition date, time and location.

Thank you,


**Deanna M. Dudley**
Paralegal

 E. STEWART JONES HACKER MURPHY LLP

200 Harborside Drive, Suite 300
Schenectady, New York 12305
ddudley@joneshacker.com
www.joneshacker.com
D: (518) 213-0125
O: (518) 274-5820
F: (518) 274-5875

CONFIDENTIALITY – PRIVILEGE NOTICE: Information contained in this e-mail is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and as such is privileged and confidential. If you are not the intended recipient, this serves as notice to you that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please delete the original message and any attachments thereto and immediately notify the sender via e-mail or by telephone at (518) 274-5820. Thank you.

1

 **Shipment Receipt**

## Address Information

**Ship to:**
CHET STOJANOVICH

105 DUANE STREET
APT. 20F
NEW YORK, NY
10007
US
5182745820

**Ship from:**
Deanna Dudley

28 Second Street

TROY, NY
12180
US
5182745820

**Shipment Information:**
Tracking no.: 776049580820
Ship date: 02/15/2022
Estimated shipping charges:

**Package Information:**
Pricing option: FedEx Standard Rate
Service type: Priority Overnight
Package type: FedEx Envelope
Number of packages: 1
Total weight: 0.20  LBS
Declared Value: 0.00  USD
Special Services:
Pickup/Drop-off: Drop off package at FedEx location

**Billing Information:**
Bill transportation to: E. Stewart Jones Hacker Murphy-072
Your reference:  HOLMES-JFH
PO no.:
Invoice no.:
Department no.:

**Thank you for shipping online with FedEx ShipManager at fedex.com.**

**Please Note**
FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1000, e.g., jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details. The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.

**FedEx.**     Shipment Receipt

## Address Information

**Ship to:**                  **Ship from:**

CHET STOJANOVICH        Deanna Dudley

50 WEST STREET            28 Second Street
APT. 29A
NEW YORK, NY             TROY, NY
10007                       12180
US                            US
5182745820               5182745820

## Shipment Information:

Tracking no.: 776049564282
Ship date: 02/15/2022
Estimated shipping charges:

## Package Information

Pricing option: FedEx Standard Rate
Service type: Priority Overnight
Package type: FedEx Envelope
Number of packages: 1
Total weight: 0.20   LBS
Declared Value: 0.00   USD
Special Services:
Pickup/Drop-off: Drop off package at FedEx location

## Billing Information:

Bill transportation to: E. Stewart Jones Hacker Murphy-072
Your reference:  HOLMES-JFH
PO no.:
Invoice no.:
Department no.:

---

**Thank you for shipping online with FedEx ShipManager at fedex.com.**

### Please Note

FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1000, e.g., jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details. The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.