M4b2HolH

```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   ALEX HOLMES, et al.,

4              Plaintiffs,              New York, N.Y.

5         v.                           20 Civ. 4448 (LJL)

6   CHET MINING CO. LLC, et al.,

7              Defendants.

8   ------------------------------x    Contempt Hearing

9                                      April 11, 2022
                                       10:10 a.m.
10
    Before:
11
                    HON. LEWIS J. LIMAN,
12
                                       District Judge
13

14                       APPEARANCES

15

16  E. STEWART JONES HACKER MURPHY, LLP
         Attorneys for Plaintiffs
17  BY:  JOHN F. HARWICK

18
    CHET STOJANOVICH
19       Pro Se Defendant

20

21

22

23

24

25
```

M4b2HolH

```
 1            (Case called)
 2            THE DEPUTY CLERK:  Starting with counsel for
 3    plaintiffs, please state your appearance for the record.
 4            MR. HARWICK:  John F. Harwick, E. Stewart Jones Hacker
 5    murphy, for plaintiffs.
 6            THE COURT:  Good morning, Mr. Harwick.
 7            I understand Mr. Stojanovich is on the phone.
 8            MR. STOJANOVICH:  I am, your Honor.
 9            THE COURT:  I'm not excusing Mr. Stojanovich's failure
10    to appear today in court as ordered, but I am going to permit
11    him to be heard over the telephone.
12            This hearing has been scheduled on plaintiffs'
13    application for an order holding Mr. Stojanovich in civil and
14    criminal contempt initially for his failure to comply with
15    Article 52 subpoenas served to aid in enforcement of a money
16    judgment, as well as Mr. Stojanovich's failure to appear for
17    deposition pursuant to those subpoenas.  In other words, the
18    subpoenas were for both documents and for his appearance.
19            The hearing is also scheduled to determine whether
20    Mr. Stojanovich should be held in civil or criminal contempt
21    for violation of my order on February 14, 2022, ordering
22    Mr. Stojanovich to appear for deposition on March 4, 2022, and
23    to produce documents pursuant to the subpoenas on March 1,
24    2022.
25            I also will hear from counsel as to whether I should
```

M4b2HolH

1   hold Mr. Stojanovich in contempt for failure to attend in

2   person today pursuant to my order issued again on February 14,

3   2022, which could not have been clearer in that it required

4   both parties to attend today.

5           I will hear first from counsel for the plaintiff in

6   terms of whether I should hold Mr. Stojanovich in civil or

7   criminal contempt.

8           The standard is that my orders must have been clear

9   and unambiguous and the proof of noncompliance with the order

10  must be clear and convincing.  In addition, it must be shown

11  that the contemnor has not been reasonably diligent and

12  energetic in attempting to accomplish what was ordered.

13          So I will hear from Mr. Harwick as to whether those

14  elements are satisfied.  I do have an affidavit from

15  Mr. Harwick plus the deposition transcript.

16          And then I will hear from Mr. Stojanovich as to

17  whether he has anything to say in terms of his earlier failure

18  to comply with the subpoenas, his failure to comply with my

19  order with respect to the deposition and the production of

20  documents, and his failure to comply with my order to be here

21  today.

22          Go ahead, Mr. Harwick.

23          MR. HARWICK:  Thank you, your Honor.

24          May it please the Court:

25          This matter is brought before you by way of notice of

M4b2HolH

1    motion dated January 12, 2022, originally returnable on

2    February 11.  The Court held a conference on the record in open

3    court following the presentment of that motion.  By the way,

4    there was no opposition ever filed or recorded by

5    Mr. Stojanovich for that motion.  But, in any event, the Court

6    held a conference in this case on the record in open court and

7    specifically instructed Mr. Stojanovich not only to appear in

8    person for a further Article 52 collection deposition, but

9    also to produce, electronically or otherwise, various documents

10   that were responsive to my subpoena by no later than March 1,

11   2022.

12              As I indicated in my supplemental affirmation, dated

13   April 1, 2022, which is on file and was served on

14   Mr. Stojanovich, he did appear for the deposition, but he did

15   not produce the documentation that was called for by my Article

16   52 subpoena and the documentation that was requested at his

17   prior collection depositions.

18              So I do believe there was not only a clear violation

19   of the Article 52 subpoena which has the effect of a court

20   order, but also a clear violation of your Honor's order which

21   was clear, placed on the record, and made known to

22   Mr. Stojanovich that he was not only to appear for the

23   deposition, but also to produce his various financial records

24   and documents and electronic data for examination.

25              I would note that while he did appear at the

M4b2HolH

1    deposition, he was very evasive with his answers; and when I

2    asked him to go retrieve his phone and his wallet and his car

3    rental agreement, he left and he didn't come back.

4         So I do think there is adequate grounds here to hold

5    this judgment debtor in contempt of court, not only civilly but

6    criminally, and give him an opportunity to purge that contempt

7    by full compliance with the outstanding subpoenas and with full

8    compliance with the Court's clear order that was placed on the

9    record in open court.

10    THE COURT:  Let me ask you a couple of follow-up

11    questions, Mr. Harwick.

12         First, in terms of the production of documents and the

13    subpoenas and my order that the documents and materials be

14    produced by March 1, do you want to highlight for me the

15    particular items that you believe you made a showing that the

16    defendant has or has access to and has failed to produce and

17    tell me what I should look at?

18    MR. HARWICK:  Yes, your Honor.

19         Well, specifically, with regard to certain electronic

20    data, we want to inspect his phone.  He had his phone.

21    THE COURT:  I believe I have got the subpoenas.

22    MR. HARWICK:  Yeah, I believe you do, your Honor.  It

23    is Exhibit A to our subpoenas.  It should have been part of the

24    original motion packet.  If not, I have another copy here

25    today.

M4b2HolH

1          THE COURT:  Do you want to hand it up?

2          MR. HARWICK:  Yes.  But if you have my motion papers,

3     it is found -- I can give you a cite or I can give you --

4          THE COURT:  I do have your original motion papers.

5          MR. HARWICK:  Okay.

6          THE COURT:  I have got an Exhibit E, an Exhibit H, and

7     Exhibit K.

8          MR. HARWICK:  Yeah, Exhibit K, I believe, has a

9     laundry list of about 61 items.

10         THE COURT:  Which ones do you want me to focus on?

11         MR. HARWICK:  Well, you know, I think obviously

12    Mr. Stojanovich has access to his tax returns --

13         THE COURT:  Just give me the number under Exhibit A.

14         MR. HARWICK:  Sure, number 3.

15         THE COURT:  Okay.

16         MR. HARWICK:  Just going through these, number 4, bank

17    account statements, Mr. Stojanovich admitted at his most recent

18    deposition that he did indeed have a brokerage account at

19    Morgan Stanley, he had an account at Santander Bank, he had an

20    account at Capital One.  He failed to produce documents showing

21    what was in those accounts.  In this day and age, where you

22    have electronic access to records going back, you know, he

23    certainly had access to those records.  He failed to produce

24    those.

25         THE COURT:  Remind me what his testimony was with

M4b2HolH

```
 1   respect to the tax returns.

 2            MR. HARWICK:  I don't recall.  He was very evasive as

 3   to the identity of his accountant.  I don't know if he claimed

 4   not to have filed returns, but --

 5            THE COURT:  Let me get his deposition testimony.  Hold

 6   on for a moment.

 7            Okay I have got 3 and 4 on Exhibit A.  What else

 8   should I be looking at?  Exhibit A to Exhibit K of your

 9   original motion.

10            MR. HARWICK:  All the documentation that is described

11   by page 50, at number 57, this is a case of cryptocurrency

12   fraud and a cryptocurrency scam.  We believe he has

13   cryptocurrency and want records about his cryptocurrency

14   accounts.

15            Number 56, "All mobile devices, including his phone or

16   tablet," we want those for a forensic examination.

17            "Software and hardware," while this cryptocurrency can

18   be held on a hard drive, we believe Mr. Stojanovich is holding

19   cryptocurrency on a hard drive somewhere.

20            THE COURT:  I think there was testimony to the -- at

21   the deposition to the fact that he did in fact have a mobile

22   device, a telephone, and that he also had a wallet, although my

23   recollection is that the testimony was unclear as to whether it

24   was in his storage facility or was in his rental car.  Is that

25   correct?
```

M4b2HolH

1          MR. HARWICK:  That is correct, your Honor.  And when I

2     asked him to go produce those things, he did leave.  We were

3     supposed to adjourn for half an hour so he could run down to

4     the parking garage, and then he never came back with any of

5     those items and, in effect, never came back.  I tried calling

6     Mr. Stojanovich on the phone number that he had given to me --

7          THE COURT:  No.  I have that.  I'm really focused on

8     the materials that -- that he failed to produce in your

9     application for contempt for violation of the subpoenas as they

10    were incorporated in my February order requiring him to produce

11    materials by March 1.

12         MR. HARWICK:  Thank you, your Honor.  Yes.

13         You know, we also requested brokerage margin account

14    statements, brokerage account statements, basically all

15    financial records that Mr. Stojanovich has access to or has,

16    and he has really failed to produce anything.

17         We did come to learn that there was money in the

18    Morgan Stanley account.  That money is now frozen.

19         I also have evidence that Mr. Stojanovich had an

20    account at the Royal Bank of Canada which he failed to disclose

21    at his deposition and he failed to produce any documentation

22    of.  So this judgment --

23         THE COURT:  Do you have the evidence about the Royal

24    Bank of Canada account with you that you would like to submit

25    as part of this hearing?  Because otherwise I just have your

M4b2HolH

1    proffer.

2            MR. HARWICK:  Yeah, unfortunately my tablet and my

3    phone were seized.  I didn't print it out.  I could submit it

4    to the --

5            THE COURT:  No.  Today is the hearing.

6            MR. HARWICK:  Yup.  No.  It's fine.  You have my

7    proffer as an officer of the court.

8            THE COURT:  No.  I'm not going to credit your proffer.

9    I'm only going to credit what I have got as evidence.

10            MR. HARWICK:  Okay.

11            In any event, I think there is ample evidence on the

12    record before the Court, especially the contempt being

13    essentially unopposed in writing, to hold this judgment debtor

14    in contempt and just to force him to use his best efforts to

15    produce all the financial records and documentation that we

16    have been seeking now to aid the enforcement of this sizeable

17    money judgment.

18            THE COURT:  Okay.  Let me ask you one more question.

19            In terms of relief, you have asked that I have

20    Mr. Stojanovich arrested.  Why isn't the more prudent course at

21    this time to impose a daily fine on Mr. Stojanovich for each

22    day that he fails to produce the materials and then to set a

23    subsequent date for a consideration of whether he should be

24    arrested and imprisoned because the financial fine is not ---if

25    the financial fine turns out not to be sufficient.

M4b2HolH

1        And second, do you have a view with respect to what,

2    if anything, is the appropriate award for Mr. Stojanovich's

3    failure to appear today should I determine that there is no

4    justification for his failure to appear today?

5        MR. HARWICK:   To answer your first question, I think

6    that additional civil fines and penalties will be wholly

7    ineffective to get this judgment debtor's attention.  We

8    already have a judgment for well over a million dollars.  There

9    are other judgment creditors out there that I represent that

10   have judgments for over a million dollars.  The money judgment

11   doesn't seem to be effective in getting this judgment debtor to

12   let us know where his assets are so we can execute upon that

13   judgment.  I think additional fines would be futile.  I think

14   you could fine him a million dollars a day and he wouldn't care

15   and he would still ignore the subpoena and he would still

16   ignore this Court's clear order.

17        I think at this point an arrest warrant would get the

18   judgment debtor's attention.  All we are looking for is

19   compliance with the Court's order and the subpoena, and he

20   holds the key to his own fate by either complying with the

21   Court's order, complying with the subpoena, or not.  But I

22   think the penalty of additional fines would not be effective.

23        To address the second point, I do think, at a minimum,

24   he should pay my attorney's fees and a fine for not appearing

25   today.  I thought this was -- well, it was an in-person

M4b2HolH

1    contempt proceeding.  It's a serious matter.  It's quasi

2    criminal.  The Court clearly ordered Mr. Stojanovich to appear

3    here in person.

4         I came down last night from Albany and stayed over so

5    I could be here on time, and my clients have incurred a

6    substantial expense in my time not only preparing this motion,

7    but also appearing before your Honor today.  So I would request

8    that my attorney's fees be paid and that the Court issue at

9    least a $10,000 fine to Mr. Stojanovich.

10        We request that the Court further order that he appear

11   in person at the next hearing, if the Court to would consider

12   scheduling a hearing, and bring with him all the subpoenaed

13   records, including all his electronic device, all of his bank

14   account record, his tax returns, his crypto asset records, and

15   permit me to conduct a further examination in this courthouse

16   with a stenographer present or at a different facility located

17   in midtown Manhattan called Diamond Court Reporting, which is

18   where we conducted the last deposition.

19        THE COURT:  Okay.  I will hear from Mr. Stojanovich.

20        MR. STOJANOVICH:  I would like to respond to each one

21   of the accusations that have been (unintelligible).

22        (Court reporter confers)

23        THE COURT:  Sir?  Sir, if you wish to be heard, you

24   have got to speak more loudly and more clearly.

25        MR. STOJANOVICH:  I was about to address that.  Part

M4b2HolH

1    of the difficulty that I am having is I have a neuromuscular

2    disorder, which I know that this --

3            THE COURT:  Sir, you have to speak more clearly.

4            MR. STOJANOVICH:  I have Charcot-Marie-Tooth disorder.

5    It's a genetic disorder I was born with.  I have had two

6    corrective surgeries.  It affects my mobility and it also

7    affects my tongue, so I apologize for my speech difficulties.

8    It gets bad during the change of seasons.

9            I sent an e-mail in this morning requesting if it was

10   possible to do a continuance, as I also was in the process of

11   having a lawyer accompanying me to --

12           THE COURT:  That application is denied.  You were on

13   notice of this hearing for a long time.  The Court prepared for

14   it.  Plaintiffs' counsel prepared for it.  You were ordered in

15   no uncertain terms to be here today.  If you had a basis for

16   not being here, you could have made the application last week.

17   You did not.  So that application is denied.

18           MR. STOJANOVICH:  I understand.  I have -- I hope I

19   can explain this better, but I have a compounding disorder that

20   I am struggling with that -- sometimes it is worse on certain

21   days.  And the reason why -- I understand it is denied, but for

22   further clarity on the subject is that the ability to travel, I

23   am traveling hours to the court.  I started having difficulties

24   yesterday and I have been having difficulty on and off all week

25   (unintelligible).

M4b2HolH

1             (Court reporter confers)

2             THE COURT:  Sir, you have to speak more clearly.

3             MR. STOJANOVICH:  I'm sorry, your Honor.  I was hoping

4    to make it through physically.  There is very little treatment

5    for the disorder that I have, and I understand that that

6    doesn't excuse my inability to arrive today.  I know it doesn't

7    forgive a court hearing that I have prior knowledge of and that

8    I have –– and I apologize that I was unable to make it there.

9    I also have been –– there was an issue with my engaged counsel

10   that I had who had their own issue with –– in regards to

11   communicating some of my difficulties that I am having, and it

12   got a lot worse yesterday when they were unable to follow

13   through from the referral.  I have sent an e-mail over in

14   regards to that this morning.  It bounced back.  And I re-sent

15   it again, explaining in great detail how it affected me.  So I,

16   first and foremost, want to apologize, your Honor, that I am

17   not there myself in person right now, as I should be.  I just

18   didn't have the mechanism by which to get there, and I was

19   hoping that my counselor would be able to help me with that, my

20   counselor there, and I do and I will have an engaged counselor

21   going forward.  I don't know if they have already contacted

22   (unintelligible) my email contacted them as my representation.

23   But through my efforts to remedy that, I have been following

24   some of the advice you gave to me to reach out to some

25   organizations, as well, over the last couple of weeks, and I

M4b2HolH

1    then finally got somebody.  Then they fell through this

2    weekend, as well, which compounded to this kind of avalanche.

3            But what's more important is my effort to provide

4    documents which he had requested.

5            I first want to correct one thing.  I arrived one hour

6    early to the deposition in person.  I was there on time.  And

7    when I had explained to him that I didn't bring my phone and my

8    wallet up, I told him I had to go walk to the rental car.  The

9    rental car didn't have a traditional printed-out agreement.  It

10   is done digitally.  It is like a Zipcar, where they have

11   membership in it, and it's like a prepaid card with a credit

12   card to go ahead and do that, to rent the vehicle.  So the

13   terms and conditions are digitally provided, not printed.  You

14   go to the vehicle, you put the key in, and then it activates

15   through your cell phone dial-in, and then you pay for it in

16   that manner.

17           Secondly, I explained that at the deposition, that it

18   was by Zipcar in that regard; that it is a membership-based

19   rental company, not like Hertz or Enterprise where they have a

20   printed contract.  And I asked for a bit of clarity of how to

21   be helpful.  I didn't have a printer obviously at my disposal

22   at the deposition.

23           Now, I did return back.  I called up numerous times.

24   I came back with my cell phone.  I have (unintelligible) here,

25   and I was willing to provide that information.

M4b2HolH

1          Furthermore, when he brought up the Morgan Stanley

2     account, that account wasn't opened with funds until after the

3     deposition had passed, the first deposition.  So there was

4     nothing to report in terms of that.

5          And during the last hearing he had referred to

6     millions of dollars in trading in that account.  There hasn't

7     been a single trade in that account.  The second that account

8     was -- funds were brought into that account, the funds were

9     frozen.  So there was no trading, as he attested to himself,

10    that the funds were frozen.  And I provided those statements

11    showing from that date on that the funds had stayed exactly

12    where they are supposed to be, that they haven't moved, they

13    haven't been spent or utilized on anything whatsoever.

14         And in our I guess you would call it private

15    discussions, we have been trying to find a mechanism by which

16    the settlement agreement can be executed, but we have been

17    having difficulty getting a copy, which we know from the

18    clients as well as the attorney, John, that has been signed but

19    they don't want to show the settlement agreement, and in the

20    settlement agreement there is a stipulation in there, they are

21    providing me with documentation, such as --

22         (Court reporter confers)

23         THE COURT:  You have to speak more slowly.  I'm going

24    to order you to stop.

25         MR. STOJANOVICH:  Where would you like me to start

M4b2HolH

1    again?  Is it better to take a step back as far as

2    describing --

3              THE COURT:  You can start -- you can start with the

4    reasons why -- let me ask you a few questions.

5              Do you have a telephone?

6              MR. STOJANOVICH:  Yes, your Honor.

7              THE COURT:  You have a telephone.

8              MR. STOJANOVICH:  Yes, your Honor.

9              THE COURT:  Why didn't you turn that over?

10             MR. STOJANOVICH:  I returned back --

11             THE COURT:  No.  Why did you not turn that over on

12   March 1.

13             MR. STOJANOVICH:  During the depositions?

14             THE COURT:  No, sir.  On March 1, a few days before

15   the deposition.

16             MR. STOJANOVICH:  Oh, the telephone of my subpoena?

17   That was the means by which they could contact that.  And I

18   didn't know that I -- I misunderstood that he wanted the actual

19   phone that was active that I had at that time to communicate

20   with.  And that's my means of communication to communicate with

21   him.  So I didn't think he was actually requesting my --

22             THE COURT:  All right.  Let me ask you a couple of

23   other questions.  Is there anything more with respect to the

24   telephone?

25             MR. STOJANOVICH:  The telephone, I have no problem

M4b2HolH

1    handing the telephone --

2            THE COURT:  No, no.  It is too late.  Maybe you will

3    be able to purge yourself of contempt.

4            But in terms of your past conduct, when you left the

5    deposition, where did you go?  I went back, as instructed, to

6    (unintelligible) and the locker.  I grabbed both my wallet and

7    my telephone.

8            THE COURT:  Is there a reason why you did not come

9    back at 1:00?

10            MR. STOJANOVICH:  I actually -- I explained to him

11    (unintelligible) at the deposition and afterward, he had said

12    return back at 12:00.  It was already 12:43.  And the other

13    members that were present, I can't return back at 12:00, that

14    is midnight, to the deposition, and I go, well, it's a ways

15    where I have to go to.  It is going to take some time to get

16    there.  I'm going to go as quickly as I can to go to both

17    locations.

18            THE COURT:  Okay.

19            MR. STOJANOVICH:  When I got back, it was just shy of

20    I think 1 -- it was like 1:12 is when I got into the lobby, and

21    I wasn't regained admittance to the building.

22            Now, I finally got into the building.  I didn't have

23    my phone with me to contact him directly afterward.  I had to

24    retrieve the phone for him to call me.  Now, I had a low

25    battery on my phone in the locker, and the car had to be

M4b2HolH

1    retrieved from the parking area in Times Square.  Times Square

2    is not that easy a place to navigate, so I had to walk eight

3    blocks, eight and a half city blocks, roughly about a mile, a

4    mile and a half, to go get to my car and back, but I explained

5    to them that's going to take some time.  You know, even if I

6    was running a full sprint at 12:42, there was no way for me to

7    do that to get my wallet and --

8                THE COURT:  Mr. Stojanovich, I'm going to cut you off.

9                I'm going to hold you in contempt.

10               MR. STOJANOVICH:  Well, just --

11               THE COURT:  Mr. Stojanovich, if you keep on talking

12    the contempt is going to get worse.

13               You had an opportunity to submit evidence in response

14    to the motion for contempt.  You forfeited that opportunity.

15    The Court, as a matter of grace, permitted you to speak today,

16    but not as a matter of right.  Your matter of right was last

17    week when you had a deadline that you failed to satisfy.  You

18    also were ordered to be here today.  You have provided

19    inadequate excuse for not being here today, and so I am going

20    to hold you in contempt.

21               I am going to order you to -- and I will go through

22    the reasons in a moment, but I am going to order you to pay a

23    financial sanction to the Clerk of Court of $1,000 a day until

24    you purge yourself of your contempt by turning over the

25    materials requested in the subpoenas and at the depositions as

M4b2HolH

1    reflected in my order of February 14.

2              I am also going to hold you in contempt for your

3    failure to show up today.  That contempt will be $5,000 payable

4    to the Clerk of Court by one week from today, April 18.

5              I am also going to permit counsel for the plaintiff to

6    submit his attorney's fees.  I am going to award attorney's

7    fees, under Rule 45 and my inherent power, to counsel for the

8    plaintiff.  Counsel for the plaintiff shall submit, by

9    Wednesday, their proposed attorney's fees.  And,

10   Mr. Stojanovich, you will have an opportunity by one week from

11   Wednesday, that will be April 20, to put in any opposition to

12   the fee award.

13             I am going to schedule a further hearing on this

14   matter for approximately two weeks from today.  My courtroom

15   deputy will give me the date to determine whether

16   Mr. Stojanovich has purged himself of the contempt and whether

17   the financial sanctions are sufficient.

18             If Mr. Stojanovich has failed to purge himself of the

19   contempt and has acted -- continued to act in a willful manner,

20   then I will, if the appropriate showing is made, order the U.S.

21   Marshals to arrest Mr. Stojanovich and to imprison him until

22   his contempt has been purged.

23             Mr. Fishman, can you give me a date for approximately

24   two weeks from today?

25             (Pause)

M4b2HolH

1          THE COURT:  That will be April 28 at 10 a.m. in this

2     courtroom, Courtroom 15C at 500 Pearl Street.

3          Mr. Stojanovich is ordered to attend on pain that if

4     he is not here, then he will be arrested and imprisoned.

5          Mr. Harwick, I am going to ask you to prepare for me

6     and to send to chambers a proposed form of contempt order

7     encapsulating what I have ordered today.

8          Let me give you a little bit more of my reasoning.

9     Mr. Harwick you will submit that to me by the end of the day

10    today on notice to the defendant, Mr. Stojanovich.

11         MR. HARWICK:  Your Honor, I will be on the train going

12    back to Albany.  I won't being back in my office until

13    tomorrow.

14         THE COURT:  You will submit it to me by -- what time

15    tomorrow can you get that to me?

16         MR. HARWICK:  By the close of business is fine.

17         THE COURT:  By 5:00 is fine on notice to

18    Mr. Stojanovich.

19         The $1,000 a day to the Clerk of Court will run only

20    after I have entered the formal order, but the $5,000 to the

21    Clerk of Court for the failure to appear will run -- that will

22    be due as I have stated.  Let me give you a little bit more of

23    my reasoning.  The plaintiffs here—Alex Holmes, Justin Navarro,

24    Nico Tramontana, Bitcoin Ventures 2020, LLC, Yasar Corporation,

25    and OnePurpose Ltd.—move to hold defendant Chet Stojanovich in

M4b2HolH

1     criminal and civil contempt.

2          Plaintiffs first moved to hold Mr. Stojanovich in

3     contempt in January 2022 for failing to comply with their

4     New York CPLR Article 52 subpoenas served to aid enforcement of

5     a money judgment.  The motion grew out of the plaintiffs'

6     efforts to collect on a default judgment they obtained against

7     Mr. Stojanovich in this case.  In essence, Mr. Stojanovich

8     failed to produce documents regarding financial accounts and

9     institutions that he was using as well as materials that would

10    help plaintiffs discover cryptocurrency believed to be in his

11    possession, including hard drives and his telephone and log-on

12    information for his iCloud accounts and a series of other

13    information, as reflected in the subpoenas, one copy of which

14    is at Exhibit K to the January motion.

15         The Court held a telephonic hearing on that

16    application on February 14, 2022.  Mr. Stojanovich appeared.

17    At the conference, the Court ordered Mr. Stojanovich to

18    personally appear for deposition at the offices of Diamond

19    Court Reporting in New York City on March 4, 2022, at 11:30

20    a.m. for the continuation of his deposition.  I also ordered

21    Mr. Stojanovich to produce all of the documents that were

22    requested in the subpoenas dated January 29, 2021, March 29,

23    2021, and May 18, 2021, as further supplemented by the request

24    made at his deposition of June 23, 2021, by no later than March

25    1, 2022.  Mr. Stojanovich indicated his understanding of the

M4b2HolH

1    Court order.  All of that is at page 22 to 23 of the transcript

2    of the hearing on February 14, 2022.

3         I held in abeyance then the motion for contempt to see

4    if Mr. Stojanovich would produce all of the relevant and

5    required documents.  I further advise Mr. Stojanovich that

6    there was a legal clinic that provided advice to people

7    proceeding *pro se* who could not afford counsel.  I also set a

8    deadline for Mr. Stojanovich to submit papers in response to

9    the renewed motion by the plaintiffs for contempt.

10        Mr. Stojanovich appeared for his deposition on March 4

11   of 2022 as ordered.  I have been provided a copy of the

12   transcript of that deposition.  He did not produce the

13   subpoenaed materials as ordered by the Court.

14        In addition, after the deposition was temporarily

15   adjourned at 12:30 p.m. for him to retrieve his phone, wallet,

16   and rental car agreement from his car, with the understanding

17   and requirement that he return and the deposition would

18   recommence at 1 p.m., he voluntarily absented himself from the

19   deposition.  He never returned defense counsel -- I'm sorry.

20   Plaintiffs' counsel's calls to him went unanswered.

21        I have also reviewed the testimony from that

22   proceeding, and Mr. Stojanovich's testimony was consistently

23   evasive and unresponsive.  In essence, he did what he could to

24   obstruct the proceedings.

25        Under Rule 45(g), the Court can hold in contempt a

M4b2HolH

person who, having been served, fails to have adequate excuse
to obey a subpoena or an order relating to it.  That is the
*PaineWebber* case, 211 FRD 247, 249 (S.D.N.Y. 2002).  In
addition, the Court has inherent power to punish for contempt
under *Chambers v. Nasco*, 501 U.S. 32 (1991).  The Court also
"has the inherent power to hold a party in civil contempt in
order to enforce compliance with an order of the Court or to
compensate for losses or damages." *Powell v. Ward*, 643 F.2d
924, 931, Second Circuit.

There are three essential elements that must be
established before a party can be held in civil contempt:
There must be an order that is clear and unambiguous, that's
*Powell v. Ward*, 643 F.2d at 931; second, the proof of
noncompliance with that order must be clear and convincing,
same case; and, third, it must be shown that the contemnor has
not been reasonably diligent and energetic in responding -- in
attempting to accomplish what was ordered, again, the same
case.

In addition, I find that the subpoenas were clear and
unambiguous in terms of what they required Mr. Stojanovich to
do.  I also find that my orders of February 14, 2022, were
clear and unambiguous in terms of what they required
Mr. Stojanovich to do.

The order of February 14 directly ordered him to
produce all of the documents that were requested in the

M4b2HolH

1    subpoenas dated January 29, 2021, March 29, 2021, and May 18,

2    2021, as further supplemented by the request made at his

3    deposition of June 23, 2021.  I ordered those materials to be

4    produced no later than March 1, 2022.  If there was any

5    ambiguity—and there was none—but if there had been any

6    ambiguity, the ambiguity would have been cleared up by the fact

7    that Mr. Stojanovich expressly indicated his understanding of

8    the Court's order.

9            I further find that the proof of noncompliance with

10   the order is clear and convincing.  I have in front of me the

11   sworn testimony of counsel for the plaintiffs that the

12   requested materials were not produced.  I also have the

13   deposition transcript indicating that the materials were not

14   produced.  I also have in front of me evidence that at least

15   some of the materials that were requested were in

16   defendant's -- I'm sorry were in plaintiffs' possession,

17   custody, and control and could have been produced.

18           MR. HARWICK:  Your Honor, I believe you meant to say

19   defendant's custody and control.

20           THE COURT:  I'm sorry, I further have in front of me

21   evidence from plaintiff that some of the requested information

22   was in defendant's possession, custody, and control.  That

23   includes income tax returns, bank account statements, mobile

24   devices, software and hardware wallets, and cryptocurrency

25   information contained on servers, computers, and laptops.  That

M4b2HolH

1    list is not by any means exclusive.  That information and that

2    evidence comes in part from the deposition transcripts.  It is

3    not disputed on the record here in front of me.  Again, the

4    defendant had an opportunity to submit evidence that he

5    complied with the subpoenas.  He did not do so.  He also had

6    ample opportunity to comply with the subpoenas.  He did not do

7    so.

8          Finally, I find that the contemnor, Mr. Stojanovich,

9    has not been reasonably diligent and energetic in attempting to

10   accomplish what was ordered.  There is no evidence whatsoever

11   that Mr. Stojanovich made any efforts to comply with the

12   subpoenas.  This is against a backdrop of plaintiffs repeatedly

13   asking for the same information and the defendant,

14   Mr. Stojanovich, repeatedly stonewalling the plaintiffs.

15         Finally, with respect to the appearance today, as I

16   already indicated on the record, my order to Mr. Stojanovich to

17   appear today in person was clear and unambiguous.  It also is

18   clear that Mr. Stojanovich is not here.  He did not comply with

19   the order to be here in person.  He has attempted to excuse his

20   absence by various medical reasons and asserting issues with

21   respect to a purported counsel.  I will note that no counsel

22   for Mr. Stojanovich has made an appearance on the record and

23   has filed a notice of appearance.  I will also note the

24   evidence from the last hearing with Mr. Stojanovich where he

25   attempted to delay the hearing by making reference to a counsel

M4b2HolH

1  who he said would appear.  That counsel had not filed a notice

2  of appearance and was not counsel for Mr. Stojanovich in this

3  case.  Mr. Stojanovich claims that he couldn't appear because

4  of allergies that have gotten worse, or words to that effect.

5  I will note that he was able to appear at the deposition.  His

6  verbal affect today was different from that at the hearing in

7  February, and I can take note of that.

8          I also will note that Mr. Stojanovich had the

9  opportunity to inform the Court at any time prior to early this

10 morning if he sought an adjournment.  He did not do so.  The

11 only conclusion that I can draw from Mr. Stojanovich's e-mails

12 this morning and from his presentation this morning,

13 particularly against the backdrop of this case, is that it is

14 consistent with a pattern displayed by Mr. Stojanovich of using

15 last-minute excuses repeatedly to avoid his obligations to the

16 Court imposed by Court order.

17         So on the basis of all of those findings, I am

18 ordering that Mr. Stojanovich be held in civil contempt.

19         With respect to the application for criminal contempt,

20 that application is further held in abeyance until we see what

21 Mr. Stojanovich does with respect to the civil contempt that I

22 have ordered.

23         Is there anything further from plaintiffs' counsel?

24         MR. HARWICK:  Yes, your Honor.  I have three things.

25 We are still requesting and reserving our right to complete

M4b2HolH

1   Mr. Stojanovich's deposition once he has supplied the

2   court-ordered financial information.

3           THE COURT:  I should -- let me, before you go further,

4   I should also add that as part of my findings of contempt and

5   Mr. Stojanovich's violation of my order, I am including

6   Mr. Stojanovich inexcusably and voluntarily absenting himself

7   from the court-ordered March 4 deposition before that

8   deposition was completed.  My order was not intended to be

9   satisfied by Mr. Stojanovich simply attending, answering a

10  number of questions, and then absenting himself while the

11  deposition was midstream.  It was clear and unambiguous that

12  Mr. Stojanovich was required to sit for his deposition.  That

13  means attending the deposition and answering questions until

14  the deposition was complete.  Mr. Stojanovich willfully failed

15  to comply with that court order.

16          Go ahead, Mr. Harwick.

17          MR. HARWICK:  So, yes, thank you.  For the record, we

18  are reserving our right to conduct this further deposition and

19  move forward with the contempt if he doesn't appear following

20  the production of documents per your Honor's order.

21          The next issue is the date of April 28.  Although I

22  don't have my phone and calendar here, I know I have an

23  arbitration in Albany that date that was going to take place

24  all the day.  I believe there may be another day around that

25  date when I am available but, again, I don't have my phone or

M4b2HolH

1   my laptop with me to check my calendar.

2              THE COURT:  Look, sir, I'm going to schedule that date

3   right now and I will schedule it for a date after April 28, but

4   you have to give me a date certain.

5              MR. HARWICK:  April 28 I believe is a Friday.

6              THE COURT:  It's a Thursday.

7              MR. HARWICK:  Maybe that Friday.

8              THE COURT:  Let me see if I can do that.

9              MR. HARWICK:  If possible I request it occur

10  afternoon, if at all possible, if I am requested to be here in

11  person.  Otherwise . . .

12             THE COURT:  4:00 on April 29.

13             MR. HARWICK:  That would work.

14             THE COURT:  Mr. Stojanovich, can you hear me?

15             MR. STOJANOVICH:  I can hear you just fine, your

16  Honor.

17             THE COURT:  You are ordered to be here April 29 at 4

18  p.m.  That's courtroom 15C at 500 Pearl Street.

19             Do you understand?

20             MR. STOJANOVICH:  Just a moment.  Let me --

21             MR. HARWICK:  Hold on, your Honor.  Now my memory is

22  coming back.  I'm taking my son to Cornell for a school visit

23  on the 29th.  I apologize.  If I had my calendar -- can we do

24  it on the 27th?  I will clear my calendar.

25             THE COURT:  No.  We are going to do it after April 28.

M4b2HolH

1          MR. HARWICK:  Okay.  The following week I don't

2      believe I have anything.

3          THE COURT:  If you do --

4          MR. HARWICK:  I'll move it.

5          THE COURT:  Give me a date, but if you do, you are

6      going to move it.

7          MR. HARWICK:  Yeah.

8          THE COURT:  Give me two dates that you might be

9      available, Mr. Harwick.

10          MR. HARWICK:  Let me see.  Probably the Tuesday I can

11      clear my calendar that week, I believe.

12          THE COURT:  That's May 3.

13          MR. HARWICK:  May 3.

14          THE COURT:  May 3 at 3 p.m.

15          MR. HARWICK:  Thank you, Judge.

16          THE COURT:  Mr. Stojanovich, can you hear me?

17          MR. STOJANOVICH:  I can hear you clearly, your Honor.

18          THE COURT:  You are ordered to be in the U.S.

19      Courthouse, May 3 at 3 p.m.  That's Courtroom 15C at 500 Pearl

20      Street.

21          MR. STOJANOVICH:  May 3 at what time?

22          THE COURT:  3 p.m.

23          MR. STOJANOVICH:  3 p.m.  And what is the address

24      of --

25          THE COURT:  500 Pearl Street.

M4b2HolH

1              MR. STOJANOVICH:  500 Pearl Street.

2              THE COURT:  Courtroom 15C.

3              MR. STOJANOVICH:  Courtroom 15C.

4              am I allowed to -- my counselor should be notifying

5      the Court soon enough of my engagement.  I apologize that it

6      wasn't taken care of properly and that it exceeded an hour.  I

7      can understand the loss behind that.  I also have one question

8      if I may, your Honor.

9              THE COURT:  Let me hear from the last point from

10     Mr. Harwick, and then I will hear from you.

11             MR. HARWICK:  Thank you, Judge.

12             Point number three, I would like to confirm with

13     Mr. Stojanovich that he can be served via e-mail with a copy of

14     the Court's order, and I would also like to get a physical

15     address for him placed on the record so we have complete

16     contact with this *pro se* litigant until such time as counsel

17     appears on his behalf.

18             THE COURT:  Do you have an e-mail address for him?

19             MR. HARWICK:  I do, and he gave one to the Court at

20     the last conference that I believe it is a phoenixdata.com

21     address.  But if that is still a good address, I would ask that

22     that be confirmed.

23             THE COURT:  Mr. Stojanovich, will you accept service

24     by e-mail of the court order?

25             MR. STOJANOVICH:  Absolutely, but I would like to

M4b2HolH

| | |
|---|---|
| 1 | clarify the e-mail address, because I am not getting any |
| 2 | communications from him.  It is admin, A-D-M-I-N, at Phoenix, |
| 3 | like the place or the bird, P-H-O-E-N-I-X, and then the word is |
| 4 | plural D-A-T-A-S.com. |
| 5 | THE COURT:  And Mr. Stojanovich that is the e-mail |
| 6 | address from which you sent the e-mail this morning that we |
| 7 | will then send to plaintiffs' counsel, is that correct? |
| 8 | MR. STOJANOVICH:  Absolutely. |
| 9 | THE COURT:  And do you have a physical address, sir? |
| 10 | MR. STOJANOVICH:  The physical address, I am still |
| 11 | between places, your Honor, and so I don't want to give an |
| 12 | address where I can't physically be at at any time of any duty |
| 13 | chain.  I just don't want to present myself in that way.  I do |
| 14 | have a mailing address, if that helps, in upstate, and it's not |
| 15 | too far from where he is at.  It is in Champlain, and it is |
| 16 | 11320 Route -- Route 9, and I will have to pull the rest of the |
| 17 | mailbox up, number 51442, Champlain, New York, and that's |
| 18 | 12919.  For mailing purposes, it's best to do digitally as this |
| 19 | residence is where I can receive mail and I receive mail on a |
| 20 | periodic basis.  So it's a P.O. box if you will.  So it's best, |
| 21 | it's most efficient to use the admin@phoenixdatas.com |
| 22 | P-H-O-E-N-I-X-D-A-T-A-S.com. |
| 23 | And also I just want to make sure, John, that I can |
| 24 | confirm your e-mail, because I have had some issues in the |
| 25 | past, lost e-mail, stuff like that.  I just want to make sure |

M4b2HolH

```
1    you are getting all of my e-mails with responses for the

2    information you have requested that I have responded back to.

3         THE COURT:  Mr. Harwick, what's your e-mail address?

4    Put it on the record.

5         MR. HARWICK:  Yes, your Honor.  My e-mail is jharwick,

6    J-H-A-R-W-I-C-K, @joneshacker, J-O-N-E-S-H-A-C-K-E-R, .com.

7         THE COURT:  Okay.  Very well.

8         All right.  Mr. Stojanovich, I gave you leave to ask

9    me a question.

10        MR. STOJANOVICH:  Yes.  If I am incapable of reaching

11   John electronically or by phone and there is a request for

12   documentation or support documentation on the four areas that

13   you spoke on, can I submit that directly to the Court if I

14   don't get a response?  Given the history of having lost

15   e-mails, the e-mail requests prior to the date of the

16   deposition for the documentation asking him what he was missing

17   from that point on, those issues I don't want to have repeat

18   themselves, so we have a clear and transparent line of

19   communication, and I want to make sure that he gets exactly

20   what he is requesting and the physical address to send the

21   phone to, so everything that I had and utilized that phone.  I

22   will have to buy another phone so I can communicate.

23        THE COURT:  Mr. Harwick, do you have a position on

24   that?

25        MR. HARWICK:  Yeah.  I would request that documents be
```

M4b2HolH

1    sent directly to my 28 Second Street, Troy, New York 12180

2    office and electronically to my e-mail.

3        I would also ask the Court to admonish and caution

4    Mr. Stojanovich not to clean his phone or wipe his phone or

5    remove any data from his phone because we intend on having it

6    forensically examined.

7        THE COURT:  I will consider the issue,

8    Mr. Stojanovich, as to whether you can purge yourself of

9    contempt by producing the documents to me or whether you are

10   required to produce them to the plaintiff.  You are required by

11   my court orders so far to produce them to the plaintiff.  In

12   terms of whether you can purge yourself of the contempt by also

13   producing them to me, I am going to consider that issue.

14       I am going to order you to do two things.  First of

15   all, if the -- if you have not purged yourself of contempt by

16   producing the materials prior to May 3, you are going to be

17   ordered to produce them, to bring them to the courtroom on May

18   3, all of the information that has been subpoenaed in the

19   subpoenas of January 29, 2021, March 29, 2021, May 18, 2021,

20   and then supplemented by the request made at the depositions of

21   June 23, 2021.

22       I am also going to advise you that if you do make

23   efforts to tamper with your phone, to wipe it, to remove data

24   from it, to alter the data that is on it, that your conduct in

25   doing so could constitute a further contempt of the court.  So

M4b2HolH

1   you should --

2           MR. STOJANOVICH:  I'm not going to change anything

3   with the phone.  The call logs will be there.  It's an analog

4   phone that I use for security reasons.  It's a very

5   straight-forward flip phone.  I got it here.  It's to date.  I

6   will remove the SIM card, of course, because I will need that

7   to make phone calls on a new phone that I have.  I am just

8   letting you know what kind of phone it is so there is no

9   expectation of anything else there.  It is -- the model of the

10  phone for the Court's record is a TCL phone, and I believe it

11  is operated by Verizon.  And I have to check the brand on it

12  real quick so there is no -- it's got a camera it's got basic

13  apps and --

14          (Court reporter confers)

15          THE COURT:  Sir, we can't understand you.

16          MR. STOJANOVICH:  Oh.  I'm sorry.  I'm sorry.  My

17  speech -- sometimes it's annoying.  I understand it.  It's

18  frustrating for me to try to fix it, but I'm working on it.

19          Sorry.  Give me a moment.  The phone which I am trying

20  to give the exact model, make and model, which I hope will be

21  helpful when they do a forensic look at the phone, that way

22  they know what the phone is.  Is it is called a TCL.  To be

23  specific it is -- I am opening up the actual serial --

24          THE COURT:  Sir, I don't think we need this detail.

25          MR. STOJANOVICH:  I just don't want it to appear that

M4b2HolH

1    I am withholding something with a smart device.  It is --

2              THE COURT:  Listen, you know, you are going to be

3    ordered to -- you are ordered to produce everything has been

4    subpoenaed.  I can't now determine whether the phone that you

5    are referring to is the only phone that you have got or not.  I

6    am not having a hearing with respect to that.  The point of it

7    is that you do have a phone that has not been turned over.  I

8    don't know whether that is the only phone.  It is certainly not

9    the only thing that has been subpoenaed.  There will come a

10   time hopefully when you have produced at least some of what has

11   been subpoenaed and when you do produce some of what has been

12   subpoenaed, then it will be up to the plaintiff to tell me

13   whether he believes that that is everything.  If the plaintiff

14   convinces me by clear and convincing evidence that it is not

15   everything, then the contempt will not be purged.

16             On the other hand, if you produce materials and it

17   turns out that you have produced everything that you have got,

18   then you will purge yourself of the contempt and the fines will

19   no longer continue to run.

20             Okay.  Anything else, Mr. Stojanovich?

21             MR. STOJANOVICH:  My last inquiry is may I, for the

22   court record, submit all prior communications and documentation

23   provided to him to the Court as well so there is no ambiguity

24   between "he said, she said," that we have proven, with the time

25   stamps of each one of the e-mails, along with the e-mail

M4b2HolH

1    blockage in the past?

2        THE COURT:  Mr. Stojanovich, in order to purge

3    yourself of the contempt, you can submit to me evidence that

4    you have satisfied the Court's order.  I will then give the

5    plaintiff an opportunity to respond.  All of that will be

6    reflected in the Court's order.

7        And with respect to the May 3 hearing, if you haven't

8    purged yourself of contempt by then, you can bring -- and you

9    can and are ordered to bring the evidence that would establish

10   that you have complied with the Court's orders.

11       MR. STOJANOVICH:  And may I e-mail that to an e-mail

12   address of my efforts to you?

13       THE COURT:  You can comply with the Court's filing

14   requirements as reflected on the Court's website.  You are

15   required to comply with the Court's filing requirements.  That

16   means filing materials on the public docket.  E-mails sent to

17   chambers are not viewed by the Court.  You are not permitted

18   except under emergency circumstances, to send e-mails to the

19   Court's chambers.

20       MR. STOJANOVICH:  All right.  I understand.  That's

21   what I wanted to ask.  I didn't want you getting a litany of

22   e-mails, distract from what work you are doing, and I

23   respect --

24       THE COURT:  Mr. Stojanovich, and I will also address

25   myself to Mr. Harwick on this, the Court has very clear

M4b2HolH

1   individual practices with respect to the filing of materials,

2   and those practices address the limited circumstances under

3   which materials can be e-mailed.  Those practices are available

4   on my website.

5            Okay.  Mr. Harwick you will submit me a proposed form

6   of order.

7            We are adjourned.

8            MR. HARWICK:  Thank you, Judge.

9            MR. STOJANOVICH:  Thank you, your Honor.

10                              oOo